[Civ. No. 11094.    Third Dist.    Aug. 29, 1966.]

WILLIAM E. DOYLE, Plaintiff and Appellant, v. BOARD OF BARBER EXAMINERS, Defendant and Respondent.

522

Carl Kuchman for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, E. G. Funke, Assistant Attorney General, and Hubert O. Bower, Deputy Attorney General, for Defendant and Respondent.

FRIEDMAN, J. — After an administrative hearing the Board of Barber Examiners ordered revocation of petitioner's barbershop certificate. He sought review by mandate in the superior court and now appeals from a judgment sustaining the board's action.

Petitioner held a barbershop certificate for premises at 1129 20th Street in the City of Sacramento as well as a certificate as a journeyman barber. Following the filing and service of the administrative accusation, petitioner received notice of a hearing before a hearing officer. He chose not to file a notice of defense as permitted by Government Code sections 11505 and 11506. He did appear at the hearing and submitted evidence on his own behalf. The hearing officer and the Board of Barber

Examiners found (1) that on November 27, 1963, between 11 a.m. and 1:30 p.m. petitioner had working in his barbershop two apprentice barbers and one journeyman barber, in violation of Business and Professions Code section 6550; (2) that on the same day petitioner violated section 6604 of the same code by having open connecting doors between his barbershop and a connecting barbershop.[1]

The barbershop at 1129 20th Street appears to be in a building at a street corner, for there is a connecting barbershop in the same building having the address 2001 L Street. Petitioner at one time or another operated both shops concurrently. Introduced in evidence in the present administrative hearing was an administrative accusation charging him with a prior violation of the apprentice limitation (§ 6550) at the 2001 L Street shop. On August 21, 1963, this court sustained a 15-day suspension of petitioner's certificate for the earlier violation. (*Doyle* v. *Board of Barber Examiners,* 219 Cal.App.2d 504 [33 Cal.Rptr. 349].) Our remittitur was issued September 25, 1963. On September 17, 1963, petitioner leased the L Street shop to one Lee Mains on a week-to-week lease terminable on

---

[1]Business and Professions Code section 6550 provides: "No registered apprentice may independently practice barbering, but he may as an apprentice do any or all of the acts constituting the practice of barbering under the immediate personal supervision and employment of a registered barber.

"Each shop may employ apprentices in the ratio of one apprentice to each registered barber working in the shop, but not to exceed two apprentices in each shop."

Section 6604 states: "The use of any room or place for barbering which is also used for residential or business purposes unless a substantial partition of ceiling height or of such less height as may be approved by the board separates the portion used for residential or business purpose, is unlawful, except that nothing in this section shall prohibit the sale, in any room or place for barbering, of cutlery, cosmetics, and toilet articles that are used in the practice of barbering."

Section 6586 states that a violation of section 6550 constitutes a cause for disciplinary action. Section 6585 is a penalty provision paralleling section 6604. Section 6585 declares: "The use of any room or place for barbering which is also used for residential or business purposes unless a substantial partition of ceiling height or of such less height as may be approved by the board separates the portion used for residential or business purpose, constitutes a cause for disciplinary action, except that nothing in this section shall prohibit the sale, in any room or place for barbering, of cutlery, cosmetics, and toilet articles that are used in the practice of barbering."

The Board of Barber Examiners has implemented the statutory requirement of a partition by a regulation (Cal. Admin. Code, tit. 16, § 224.1) providing: "The term 'substantial partition' as used in Sections 6585 and 6604 of the Business and Professions Code permits a partition which contains a connecting door if such door is equipped with a self-closing device and is kept closed when not actually being used for ingress or egress."

one week's notice by petitioner, the lessor. The lease was obviously timed to coincide with petitioner's suspension.

In the trial court petitioner asserted (a) lack of evidentiary support for the findings and (b) a penalty disproportionate to the offenses. He did not, as permitted by Code of Civil Procedure section 1094.5, subdivision (b), claim that the administrative findings failed to support the administrative decision. On appeal he drops his attack on the findings and shifts to an attack on their sufficiency as causes of discipline, maintaining also his claim of excessive penalty.

Since petitioner no longer asserts lack of evidentiary support for the findings, we reserve the question whether that ground of review is at all available to one who has not filed a notice of defense in the administrative proceeding. (See Gov. Code, § 11506, subd. (b).)　　The contention that the findings do not form grounds of discipline raises questions of law. (*Covert* v. *State Board of Equalization,* 29 Cal.2d 125, 133 [173 P.2d 545].) The charge is one which petitioner did not raise in the trial court.　　While injection of a new theory on appeal is not favored, it may be permitted where it embraces only a question of law and the opposite party has adequate opportunity to debate it. (*Panopulos* v. *Maderis,* 47 Cal.2d 337, 340-341 [303 P.2d 738].)　　Unlike a factual attack on the findings, the claim of their inadequacy to support a penalty evokes review of identical scope in the trial and appellate courts. (Cf. *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301 [196 P.2d 20].)　　Also, the Attorney General has chosen to meet rather than avoid petitioner's contentions on appeal. Thus it is appropriate to consider whether the findings state violations of law calling for a penalty.

　　The first finding is ambiguous. If the board had found, in the statutory language, that petitioner had working in his shop two apprentices and only one journeyman (registered) barber, that declaration of ultimate fact would be clear enough. The board went farther, declaring that the described situation existed between the hours of 11 a.m. and 1:30 p.m. of a particular day. So drawn, the finding might mean only that one of two or more journeymen barbers was physically present during a specified two and one-half hour period, while one or more journeymen were absent, however temporarily.　　In stating that the shop "may employ" apprentices in the prescribed ratio, the statute contemplates a prevailing, good faith employment situation, not uninterrupted physical presence of one journeyman per apprentice. (*Bizzelle* v. *State,* 134 Tex.

Crim.Rep. 467 [116 S.W.2d 385]; *State* v. *Lanctot,* 62 Wn.2d 845 [384 P.2d 877, 97 A.L.R.2d 1201].) It does not require an apprentice to drop his shears the moment a journeyman leaves for lunch.

█ Nevertheless, there is no reason why the ambiguous finding may not be supplemented by reference to the administrative record. (*County of Amador* v. *State Board of Equalization,* 240 Cal.App.2d 205, 219 [49 Cal.Rptr. 448].) So supplemented, it is adequate if it permits the courts to determine whether the decision is based on lawful principles. (*Swars* v. *Council of City of Vallejo,* 33 Cal.2d 867, 871 [206 P.2d 355].) █ The record shows the following: A journeyman barber named Nick Starlington worked in the 20th Street shop. Two apprentice barbers, Griffis and Dachlan, normally worked in that shop. Doyle regarded himself and Starlington as the two journeymen who maintained numerical parity with the two apprentices. On the date in question Dachlan entered the shop for a brief time in the morning but had the rest of the day off. Jess Perez, an apprentice who usually worked in the L Street shop, replaced him in the 20th Street shop that day. The evidence indicated that the shuffling of barbers and customers between the two shops was quite frequent. On that day a door at the end of a short passageway leading into the L Street shop was kept open. Between 11 a.m. and 1:30 p.m., Starlington and the two apprentices, Griffis and Perez, worked in the 20th Street shop. No other barbers were present. Doyle himself was not present. The evidence demonstrated that Doyle visited the shop for a brief interval each morning and evening and at irregular times during the day, occasionally administering a haircut. As a prevalent situation, Starlington was the only registered barber working in the shop.

Viewing the finding in the light of this evidence, we interpret it as a declaration that Doyle's intermittent presence in the shop was only a subterfuge, that there were not two registered barbers "working" in the shop in good faith compliance with the law. So viewed, the finding is sufficient to justify a penalty.

██ As to the second finding, the open door between two barbershops: Section 6604 (fn. 1, *supra*) prohibits the use of "any . . . place for barbering which is also used for . . . business purposes unless a substantial partition . . . separates the portion used for . . . business purpose . . . ." We agree with petitioner's contention that no violation occurs when two barbershops are involved. █ True, a barbershop

is in a real sense a place of business. The statute, however, describes two kinds of location: (a) a place for barbering and (b) a place used for business purposes, drawing an implied distinction between the two. The distinction is consistent with the basic purpose of the barber licensing law, which is essentially a public health regulation. (*In re Scaranino*, 7 Cal.2d 309, 311 [60 P.2d 288] ; *Doyle* v. *Board of Barber Examiners, supra*, 219 Cal.App.2d at pp. 507, 508.) Section 6604 aids this purpose by requiring the physical separation of barbershops from places where other kinds of business are conducted, such as a restaurant, bar or cardroom.[2] Construed to require physical separation between two areas used for barbering only, it would have no discernible purpose. ▮ We conclude that the board's second finding furnishes no ground of disciplinary action.

▮ We do not reach the claim of excessive penalty. Since one of the two charges of misconduct is reversed, the case should be remanded to the administrative board for reconsideration of the penalty. (*Bonham* v. *McConnell*, 45 Cal.2d 304 [288 P.2d 502].)

The judgment is reversed and the trial court directed to enter judgment commanding respondent board to set aside its order of revocation and to reconsider the case and amend its order in the light of this opinion and judgment.

Pierce, P. J., and Regan, J., concurred.

---

[2]Consistent with this view of the statute is a Board of Barber Examiners regulation (Cal. Admin. Code, tit. 16, §224.2) providing: " 'Business purposes' within the meaning of Sections 6585 and 6604 of the Business and Professions Code shall include, but not be limited to, the sale, by vending machine or otherwise, of cigars, tobacco, confectionery, soft drinks and all like commodities. 'Room or place for barbering' within the meaning of Sections 6585 and 6604 of the Business and Professions Code shall include not only barber shops but also barber colleges.' '